475 A.2d 132

**William G. ZINN**

v.

**Gladys J. ZINN, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1984.

Filed April 13, 1984.

Richard K. Renn, York, for appellant.

Steven K. Portko, York, for appellee.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from a decree granting plaintiff husband a divorce on the ground of indignities.[1] Appellant wife's initial contention is that this Commonwealth has no subject matter jurisdiction over this action. Having conducted a *de novo* review of the record, *Moslen v. Moslen*, 260 Pa.Super. 508, 394 A.2d 1042 (1978); we find it inade-

---

1. This action was filed under the Divorce Law, Act of May 2, 1929, P.L. 1237, as amended, 23 P.S. § 1 *et seq.* (repealed), but was transferred to the Divorce Code, Act of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 101 *et seq.*

quate to resolve this question. We must reverse and re- mand for further hearing.

Appellee was born and raised in Pennsylvania. He then joined the United States Air Force and has never returned to Pennsylvania to reside, but has been stationed all over the world. Appellee has always designated Pennsylvania as his legal residence. Appellant was born in England and has never lived in Pennsylvania. After the parties were married on October 1, 1960, they resided together in Texas, Japan, Germany, Nebraska, the Phillipines, Greece, and back to Germany again. Upon nearing retirement from the Air Force, appellee selected transfer to Florida. The parties separated on January 13, 1979, and this action was filed on July 12, 1979. At the time the complaint was filed, appellee was living off-base in Florida and appellant was living in Delaware.

Pennsylvania has jurisdiction over this divorce if, at the time the action was filed, appellee had been a "bona fide resident" of this Commonwealth for a period of at least one year. 23 P.S. § 16 (repealed).[2] "Bona fide residence" means domicile; i.e., actual residence coupled with the intention to remain there permanently or indefinitely. *McKenna v. McKenna*, 282 Pa.Super. 45, 422 A.2d 668 (1980). Mere absence from a domicile, however long continued, cannot effect a change of domicile; there must be an animus to change the prior domicile for another. *In re McKinley's Estate*, 461 Pa. 731, 337 A.2d 851 (1975). Furthermore, there is a presumption that the original domicile continues and a person asserting a change of domicile must demonstrate such change by clear and convincing proof. *Id.; McKenna v. McKenna, supra.*

Since the concept of change of domicile requires some free exercise of will on the part of the person involved, *McKenna v. McKenna, supra;* the domicile of servicemen generally remains unchanged when temporarily

---

**2.** "Bona fide residence" remains the crucial requirement of subject matter jurisdiction under the Divorce Code, 23 Pa.S.A., § 302.

stationed at a particular place while in the line of duty. *Wallace v. Wallace,* 371 Pa. 404, 89 A.2d 769 (1952); *Turek v. Lane,* 317 F.Supp. 349 (E.D.Pa.1970). Thus, a serviceman's domicile is presumed not to change from his domicile at the time of enlistment. *Turek v. Lane, supra.* There is no doubt, however, that a serviceman *may* acquire a new domicile at any point during his military service if the circumstances show an intent to abandon his original domicile and adopt the new one. *Wallace v. Wallace, supra, Ellis v. Southeast Construction Company,* 260 F.2d 280 (8th Cir.1958); *Turek v. Lane, supra.*

Appellee argues that Pennsylvania remained his domicile at the time of the filing of the complaint. At a hearing conducted before a master on February 19, 1980, he presented the following documentary evidence: federal income tax forms depicting a Pennsylvania address, military records depicting a Pennsylvania address, a valid international driver's license depicting a Pennsylvania address, a Pennsylvania resident's fishing license, and a valid Pennsylvania driver's license.[3] Appellee also testified that he was registered to vote in Pennsylvania, and stated that he had always considered Pennsylvania to be his "legal residence." N.T. February 19, 1980, at p. 5.

Appellant contends that at the time of the filing of this action, appellee had abandoned Pennsylvania as his domicile and had adopted a new domicile in Florida. At the hearing, appellee testified that he had chosen to live off-base in Florida. Appellant then attempted to establish that appellee had moved to Florida with the intent of residing there permanently:

Q. Mr. Zinn, you like scubba [sic] diving don't you?

A. I like the water, yes.

Q. And you like sunbathing?

A. Yes.

---

3. The Pennsylvania address listed on these various documents was R.D. # 2, Mt. Wolf, Pennsylvania. This is the address of the appellee's parents.

Q. Did you have an discussions with your wife about where you would spend your retirement?

A. Yes, I said I felt that I didn't particularly want to retire where it was cold and I thought a warm climate would be preferable.

Q. You didn't particularly want to retire to Pennsylvania did you Mr. Zinn?

A. I didn't particularly want to retire to Pennsylvania because of the weather but I never agreed to retire anywhere else either.

Q. You never talked to your wife about retiring to Florida?

Objection. This does not go to the point of jurisdiction.

Mr. Heim [Master]: I agree.

N.T. of February 19, 1980, at pp. 19–20. Unfortunately, the master refused to allow any further inquiry regarding whether appellant had selected transfer to Florida so that he could reside there permanently. *See also* N.T. of February 19, 1980, at pp. 22–23 (cross-examination of appellee curtailed), 72–73 (direct examination of appellant curtailed). The master's reasoning was that where appellee planned to retire was irrelevant to the question of jurisdiction because appellee had not yet retired.

Since it is clear, however, that appellee could have formed the intent to permanently reside in Florida prior to his actual retirement, *Wallace v. Wallace, supra; Ellis v. Southeast Construction Company, supra; Turek v. Lane, supra,* the line of questioning disallowed by the master was highly relevant to the issue of whether appellee *had* adopted a new domicile, and therefore, whether this court could properly exercise jurisdiction. It is essential that all facts relevant to a divorce be fully explored.[4] *Barr v.*

4. We note that in a petition to open filed by appellant subsequent to the entry of the final decree, the appellant alleged that: "Subsequent to the Master's Hearing and prior to this Court entering a Decree in Divorce," appellee had been discharged from the military, purchased a home in Florida, and remained there. In light of these alleged facts, the appellant requested that the matter be opened and remanded to the master for further testimony concerning the appellee's domiciliary

*Barr*, 232 Pa.Super. 9, 331 A.2d 774 (1974). Accordingly, we must refer this case back to the court below for further inquiry as to appellee's domiciliary intent.

Reversed and remanded. Jurisdiction is not retained.

intent as it bore on jurisdiction. Prior to this appeal, the lower court denied the petition to open, stating that "What his [appellee's] future intent was would not be of relevance." N.T. of conference and order of September 11, 1981. Having held that appellee's future intent was crucial to the issue of jurisdiction, appellant may, on remand, enter the evidence alleged in the petition to open. That evidence, however, may only be considered as circumstantial proof of appellee's domiciliary intent at the time he filed the complaint.